UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

MELANIE LOWE and Z.C., A MINOR, BY AND : 
THROUGH HIS MOTHER, MELANIE LOWE, :
             Plaintiffs, :
  :
        v. :      No. 5:20-cv-1413
  :
LANCASTER COUNTY CHILDREN AND :
YOUTH SOCIAL SERVICES; KAITLIN GEISS; :
KAREN GARBER; and JOHN DOE, :
            Defendants. :
_____

**O P I N I O N**
**Motion to Dismiss, ECF No. 5 - Granted**

**Joseph F. Leeson, Jr.**                                 **December 8, 2020**
**United States District Judge**

## I.    INTRODUCTION

      This action was brought pursuant to 42 U.S.C. § 1983 by Plaintiff Melanie Lowe on

behalf of herself and her minor son, Z.C., for the alleged constitutional violations Defendant

Lancaster County Child and Youth Social Services ("LCCYS") committed in removing Z.C.

from his mother's care.  Defendants Kaitlin Geiss, Karen Garber, and John Doe are social

workers employed by LCCYS.  The named Defendants have filed a Motion to Dismiss.  For the

reasons set forth below, the Motion is granted, but Plaintiffs are given leave to amend.

## II.    BACKGROUND

### A.    Factual Allegations

      The Complaint alleges as follows:

      Lowe is the mother and primary caregiver of five minor children, including Z.C., who

was ten years of age at the time of the events giving rise to this action.  *See* Compl. ¶¶ 14, 16,

ECF No. 1.  At that time, Z.C. spent alternate weekends with his father, James F. Campbell, in Lancaster County.  *Id.* ¶ 17.

On or about August 5, 2018, when Z.C. was staying with his father, Campbell called the police to report that Z.C. molested his nine-year-old daughter and that he "want[ed Z.C.] out of his house."  *Id.* ¶¶ 18-20.  The police reported the incident to LCCYS, and both responded to Campbell's house.  *Id.*  Lowe also responded, but was prevented from taking custody of, or talking to, Z.C.  *Id.* ¶¶ 21-22.  LCCYS, after having been made aware that Lowe was the primary caregiver and that Z.C. was merely visiting his father's house, took custody of Z.C.  *Id.* ¶ 23.

Lowe repeatedly contacted LCCYS to inquire about her son's wellbeing, but LCCYS did not answer or return any of her telephone calls.  *Id.* ¶ 24.  LCCYS did not notify Lowe of the emergency hearing in the Juvenile Court of Lancaster County on August 6, 2018.  *Id.* ¶¶ 23, 24. At this hearing, the court granted temporary custody of Z.C. to LCCYS.  *Id.* ¶ 24.

On August 8, 2018, Lowe and Campbell attended a shelter care hearing, during which LCCYS falsely represented to the court that Z.C. was living with his father, not his mother, and that Z.C. had informed his mother of a prior incident of sexual abuse about which she had not informed Campbell or the authorities.  *Id.* ¶ 27.  After the hearing, the court granted legal and physical custody of Z.C. to LCCYS pending a disposition hearing on October 22, 2018.  *Id.* ¶ 27. Z.C. was thereafter moved to Bethany Children's Home, which was fifty miles away from Lowe's home.  *Id.* ¶ 28.  LCCYS permanency caseworker, Defendant Geiss, and permanency supervisor, Defendant Garber, initiated an investigation of Lowe.  *Id.* ¶ 31.

On or about August 27, 2018, Z.C.'s aunt, Tiffany Zellers, delivered a "kinship care" application to Geiss, in an effort to take custody of Z.C.; however, Geiss never responded to the application.  *Id.* ¶ 33.  LCCYS again misrepresented facts to the court at an adjudicatory hearing

in the Lancaster County Juvenile Court held on August 27, 2018, including the fact that Ms. Zeller's submitted an application for "kinship care." *Id. ¶* 33.

The investigation determined that the allegations were unfounded. *Id. ¶¶* 30, 34.  On September 26, 2018, Garber informed Lowe of the same; however, LCCYS did not file a petition to withdraw its petition for temporary custody of Z.C. until October 9, 2018. *Id. ¶¶* 34-35.  On October 10, 2018, Z.C. was returned to the custody of Lowe, fourteen days after the investigation was concluded. *Id. ¶* 36.  In total, Z.C. was separated from his mother for sixty-six days. *Id. ¶* 48.

LCCYS asked Chester County Children and Youth Social Services to open a case for Lowe and continue monitoring her and her family. *Id. ¶* 37.  Chester County Children and Youth Social Services closed the case on Lowe and her family on December 28, 2018. *Id. ¶* 39.

### B.    Procedural Background

Plaintiffs commenced this action on March 13, 2020.  The Complaint asserts: (1) all Defendants violated Plaintiffs' substantive due process rights by removing Z.C. from his mother's custody and retaining custody without reasonable suspicion of abuse or imminent danger of abuse; (2) LCCYS, Geiss, and Garber violated Plaintiffs' procedural due process rights by failing to advise Lowe of the same and, also, by putting false information in the petition filed with the court seeking custody of Z.C. and by failing to include relevant exculpatory and explanatory information in the petition thereby denying Lowe the right to an informal ruling by the court; and (3) LCCYS violated Plaintiffs' constitutional rights by developing and maintaining policies or customs of removing children from their natural families and placing them in institutions, as well as failing to properly supervise and train caseworkers. *See* Compl. ¶¶ 46-47, 52, 56-58 (*Monell* claim).

LCCYS, Geiss, and Garber filed a Motion to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs failed to assert a cause of action upon which relief may be granted and, additionally, that Defendants Geiss and Garber are entitled to either absolute or qualified immunity.  The Motion has been fully briefed.  To date, Defendant John Doe has not been identified or served with the Complaint.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(6)

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* ("[W]hether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.      Section 1983 Claims for Civil Rights Violations

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:

1.      violation of a right secured by the Constitution and laws of the United States;[1] and

2.      that the violation was committed by a person acting under color of state law.

*See West v. Atkins*, 487 U.S. 42, 48 (1988).  To determine if a person is "acting under color of state law" (a state actor), the court looks at whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).

A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability [under § 1983] cannot be predicated solely on the operation of respondeat superior."  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

### C.      Due Process Claims

"The touchstone of due process is the protection of the individual against arbitrary action of the government."  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  The Due Process Clause "prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process."  *Croft*, 103 F.3d at 1125.

---

[1]      Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted).

### 1.    Substantive Due Process

To state a claim for a violation of substantive due process rights, a plaintiff must show:

1.    the interest at issue is protected by the substantive due process clause; and

2.    "the government's deprivation of that protected interest shocks the conscience."

*Kane v. Barger*, 902 F.3d 185, 192 (3d Cir. 2018).  As to the first element, there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child."  *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).  As to the second element, the defendant's conduct "must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"  *Miller v. City of Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999) (applying the shocks-the-conscious standard to substantive due process claims against a child welfare agency).  In cases against a child welfare agency or its workers, that "standard is met only if they lacked 'reasonable and articulable evidence giving rise to a reasonable suspicion that [the minor had] been abused or [was] in imminent danger of abuse' at the time of the challenged action."  *See A.J. v. Lancaster Cty.*, No. 20-1154, 2020 U.S. App. LEXIS 29451, at *3 (3d Cir. Sep. 16, 2020) (quoting *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 241 (3d Cir. 2013)).  "'[O]nly the most egregious official conduct' violates substantive due process."  *J.R. v. Lehigh Cty.*, 534 F. App'x 104, 108 (3d Cir. 2013) (quoting *Miller*, 174 F.3d at 375 ("To generate liability, executive action must be so ill-conceived nor malicious that it 'shocks the conscience.'")).

### 2.    Procedural Due Process

To state a claim for deprivation of procedural due process rights, a plaintiff must allege:

1.    the deprivation of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and

2.      the procedures available did not provide "due process of law."

*See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  As mentioned above, there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child" so as to satisfy the first element.  *See Santosky*, 455 U.S. at 753 ("When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.").  As to the second element, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Additionally, to assert a procedural due process claim against a state actor, the plaintiff "must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process.'"  *Mulholland*, 706 F.3d at 238 (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994)).  A "state may cure a procedural deprivation by providing a later procedural remedy."  *Bonilla v. City of Allentown*, 359 F. Supp.3d 281, 297 (E.D. Pa. 2019) (referencing *Marchionni v. SEPTA*, No. 98-6491, 2000 WL 730348, at *2 (E.D. Pa. June 7, 2000)).

**D.      *Monell* Claims**

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95).  "[I]t is when

execution of a [municipality's] policy[2] or custom,[3] whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.  The plaintiff "must identify a custom or policy and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

Under *Monell*, a local government entity may be liable under 42 U.S.C. § 1983 if the plaintiff can show either:

1.      an employee acted pursuant to a formal policy or a standard operating procedure;

2.      the alleged violations were taken by a person with policy-making authority; or

3.      an official with such authority has ratified the unconstitutional actions of a subordinate.

*See Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 123 n.7 (3d Cir. 2011).  Under the second and third showing above, the fact that the individual "-- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986).  "[W]hether an official had final policymaking authority is a question of state law." *Id.* ("We hold that municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action

---

2       "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690).  A "policy cannot ordinarily be inferred from a single instance of illegality." *Losch v. Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984).

3       A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice.  *Monell*, 436 U.S. at 690.

is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

Failing to train municipal employees can also be a source of liability, but "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 388, 390. *See also Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996).  A three-part test has been formulated to determine whether a municipality's failure to train or supervise amounts to deliberate indifference. *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).  It must be shown:

1.  municipal policymakers know that employees will confront a particular situation;

2.  the situation involves a difficult choice or history of employees mishandling; and

3.  the wrong choice by an employee will frequently cause deprivation of constitutional rights.

*Id*. *See also Connick v. Thompson*, 563 U.S. 51, 62 (2011) (holding that a "pattern of constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train").

### E.    Absolute Immunity Defense for Government Workers

Child welfare workers taking actions "on behalf of the state . . . in preparing for, initiating, and prosecuting dependency proceedings" are entitled to absolute immunity. *Ernest v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 495 (3d Cir. 1997).  This includes "actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors." *Id.* at 493.  Granting

absolute immunity to caseworkers protects social workers from "execut[ing] their duties with one eye constantly regarding the possibility of incurring liability for their conduct" and thus, taking away from the "public interest in protecting abused or neglected children." *Fanning v. Montgomery Cty Children and Youth Servs.*, 702 F. Supp. 1184, 1187 (E.D. Pa. 1988) (internal quotations omitted).  However, absolute immunity has been used as a "rare exception" to qualified immunity, only available in "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Fanning*, 702 F. Supp. at 1189 (quoting *Meyers v. Contra Costa Cty. Dept. of Social Servs.*, 812 F.2d 1154, 1158 (9th Cir. 1987)) (internal quotations omitted).

### F.  Qualified Immunity Defense for Government Workers

"[S]tate officials performing discretionary functions are entitled to qualified immunity for civil damages so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Puricelli*, 2000 WL 760522, at *7 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Supreme Court has developed a two-step test in determining if qualified immunity applies.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds* by *Pearson v. Callahan*, 555 U.S. 223 (2009).  A court must consider whether:

1.  "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right," and

2.  was the "right is clearly established.

*See id.*  As to the second step, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted."  *Id. See also Plumhoff v. Rickard,* 134 S. Ct. 2012, 2023

(2014) ("[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (stating that "existing precedent must have placed the statutory or constitutional question beyond debate").  Under qualified immunity, an official is protected from liability for "mere mistakes in judgment."  *Fanning*, 702 F. Supp. at 1189 (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978)) (internal quotations omitted).

## IV.    ANALYSIS

### A.    Count I: Violation of Substantive Due Process

Count I is brought against all Defendants and alleges a violation of Plaintiffs' substantive due process rights for removing Z.C. from his mother's custody and retaining custody of Z.C. without reasonable suspicion of abuse or imminent danger of abuse.

Initially, the Court finds that under the Complaint's allegations Defendants Geiss, Garber, and Doe are caseworkers employed by LCCYS, a county agency, and are state actors for purposes of § 1983.  However, the allegations are insufficient to show that the decision of these Defendants to remove Z.C. from Lowe's home shocked the conscience.

Child Protective Services Law imposes a duty on a county agency to investigate all claims of child abuse.  *See* 23 Pa.C.S. § 6368; *Maldonado v. City of Phila. Dep't of Human Servs.*, No. 18-1492, 2020 U.S. Dist. LEXIS 178540, at *15 (E.D. Pa. Sep. 29, 2020) (finding that consistent with DHS policy "to investigate every report of abuse regardless of previous unfounded reports," the caseworker "had a duty and objectively reasonable suspicion" to reinvestigate the plaintiff for her child's renewed complaints of abuse).  It further provides that "the county agency shall ensure the safety of the child and any other child in the child's home."

23 Pa.C.S. § 6368(a).  *See also* 23 Pa.C.S. § 6368(c)(3) (providing that child protective workers may take "[a]ny action necessary to provide for the safety of the child or any other child in the child's household").

Here, Defendants were advised by Z.C.'s father that Z.C. molested the father's nine-year-old daughter and wanted Z.C. out of his house.  LCCYS also knew that Lowe, who wanted custody of Z.C., had other minor children in her home.  There are no allegations that Z.C.'s father misrepresented his daughter's claim of abuse or that Defendants had any reason to suspect the same.  Thus, unlike the caseworker in *Croft* who removed a child based on a "six-fold hearsay report by an anonymous informant," Defendants here relied on the report of abuse made by Z.C.'s own father, who had been caring for Z.C. on a bi-monthly basis, that Z.C. molested another child in his home.  *Accord Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1127 (3d Cir. 1997) (reasoning that the caseworker was not entitled to rely "on the unknown credibility of an anonymous informant unless she could corroborate the information through other sources which would have reduced the chance that the informant was recklessly relating incorrect information or had purposely distorted information").

Further, Lowe's contention that "[i]f, as Defendants argue, Z.C. truly posed a threat to other children, it defies logic that LCCYS would authorize his placement in a shelter with a number of other children," *see* Resp. 5 n.1, is unavailing.  Unlike Lowe's home where there was no safety plan in place or guaranteed supervision of Z.C., shelters are equipped to deal with the dangers the children it houses might pose.

Because Defendants had a duty to "ensure the safety of the child *and any other child in the child's home*," 23 Pa.C.S. § 6368(a) (emphasis added), Plaintiffs have failed to show that their decision to remove Z.C. from Lowe's custody was either ill-conceived or malicious.  *See*

*Miller*, 174 F.3d at 375 ("To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'").  Rather, the allegations show that Defendants had "reasonable and articulable evidence" that Z.C. abused another child and that the four other minor children in Lowe's home were in imminent danger if Z.C. was allowed to remain in his mother's custody.

The fact that the abuse allegations against Z.C. were later determined to be unfounded does not alter this conclusion.  *See Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1126-27 (3d Cir. 1997) ("We realize there may be cases in which a child services bureau may be justified in removing either a child or parent from the home, even where later investigation proves no abuse occurred.").  Nor does the Court find that Defendants' failure to return Z.C. to the custody of Lowe for approximately two weeks after the investigation concluded the allegations were unfounded was deliberately indifferent, let alone conscience shocking.  *See Miller v. Office of Children, Youth, & Families of Allegheny Co.*, No. 13-315, 2013 U.S. Dist. LEXIS 149318, at *13-16 (W.D. Pa. Oct. 17, 2013) (rejecting the substantive due process claim based on the defendants' failure to take any affirmative steps over a period of two months toward returning the minor to his father following the completion of the family service plan and concluding that the defendants' conduct did not demonstrate at least gross negligence or arbitrariness), *aff'd by* 2015 U.S. App. LEXIS 4836 (3d Cir. Pa., Mar. 25, 2015).  The Complaint therefore fails to state a substantive due process claim against Defendants Geiss and Garber.

Although these Defendants have also moved to dismiss based on immunity grounds, absolute immunity only applies to those actions Defendants took in a prosecutorial role.  *See Ernst v. Child & Youth Servs.*, 108 F.3d 486, 495-96 (3d Cir. 1997) (holding that child welfare

workers "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings").  Qualified immunity appears to protect Defendants' other conduct alleged in the substantive due process claim.  *See Bayer v. Monroe Cty. Children & Youth Servs.*, 577 F.3d 186, 190 (3d Cir. 2009) (holding that the caseworkers, who did not return the children to their father for more than three weeks after the abuse allegations were deemed unfounded, were entitled to qualified immunity for the substantive due process claim); *Fanning*, 702 F. Supp. at 1189-90 (holding that qualified immunity, not absolute immunity, may protect social workers that remove children from situations of imminent danger and, further, in the absence of malice, case workers are protected by qualified immunity as to the substantive due process claim that the minor was not allowed to contact his parents after being removed from their custody).  However, it would be premature to determine which, if either, immunity applies because leave to amend the Complaint is granted.  *See Guest v. Allegheny Cty.*, No. 20-130, 2020 U.S. Dist. LEXIS 125812, at *29 (W.D. Pa. July 17, 2020) (explaining that it would be premature to decide whether the defendants' conduct was investigatory or taken in a prosecutorial capacity).

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 236.  It is unclear whether an amendment would be futile here and must therefore be permitted as to Defendants Geiss and Garber.  *See id.*

As to Defendant LCCYS, although "it is possible for a municipality to be held independently liable for a substantive due process violation even when none of its individual employees is liable, . . . in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights."  *Sanford*, 456 F.3d at 314.  The claim against LCCYS

therefore fails for the reasons set forth above.  Additionally, LCCYS can only be held liable if the harm resulted from the execution of a "policy or custom," *see Monell*, 436 U.S. at 694, and no such policy or custom is alleged in Count I.  Consequently, this Count is dismissed without prejudice as to LCCYS and with leave to amend.

Aside from naming Doe as a defendant and in Count I, the Complaint contains absolutely no allegations pertaining to Defendant Doe.  The allegations against him are therefore insufficient to state a substantive due process claim.  Generally, the court may not sua sponte dismiss a defendant if an amendment could cure the pleadings.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (providing that sua sponte dismissal can only be granted if "no set of facts" in support of the claim could entitle the plaintiff to relief).  However, because all claims will be dismissed, the case may not proceed as to Defendant Doe alone.  *See Hindes v. FDIC*, 137 F.3d 148, 156 (3d Cir. 1998) (holding that Doe defendants are deemed dismissed if all named defendants are dismissed); *Hepp v. Facebook, Inc.*, No. 19-4034-JMY, 2020 U.S. Dist. LEXIS 136972, at *20 n.5 (E.D. Pa. Aug. 3, 2020) (dismissing the amended complaint in its entirety, including the claims against the Doe defendant, because all named defendants were dismissed).  Accordingly, Count I is dismissed against Doe, but with leave to amend if an amended claim is also refiled against any named defendant.

## B.     Count II: Violation of Plaintiffs' Procedural Due Process

In Count II, Plaintiffs allege Defendants Geiss, Garber, and LCCYS violated their procedural due process rights by failing to notify Lowe of her rights, by failing to include relevant exculpatory and explanatory information in the petition seeking custody of Z.C, which was filed with the court, and by placing false and misleading information in said petition.

As to Lowe's assertion that she was not notified of her procedural due process rights, the allegations do not support the claim.  To the extent Lowe complains that she was not notified of the emergency hearing on August 6, 2018, at which time the court gave custody of Z.C. to LCCYS, she had no due process right to such notice.  For these types of hearings, the need to protect children outweighs the interests of the parents.  *See Miller*, 174 F.3d at 374 (dismissing the procedural due process claim for not including a parent in the emergency pre-deprivation hearing because such a requirement could delay these time-sensitive hearings that are intended to protect children who are in imminent danger of harm and "would create a burden on the state that would not be justified by commensurate relief to the affected parents' rights").  Further, the court held a prompt second hearing on August 8, 2018, about which Lowe was notified.  Accordingly, had there been a due process violation, this hearing would have cured any violation.  *See* 42 Pa. C.S.A. § 6332(b) (providing that if the child is not released at the informal hearing and a parent was not notified of the same, the court "shall rehear the matter without unnecessary delay . . .").  Notably, this hearing was held within 72-hours after Z.C. was first removed from Lowe's custody.  *See* 42 Pa. C.S.A. § 6332(a) (requiring a hearing, with notice, be held within 72 hours after a child is placed in detention or shelter care).  Consequently, Defendants never refused to provide Lowe with the opportunity to be heard in a meaningful time and manner as constitutionally required.  Accordingly, the allegations show that Plaintiffs' procedural due process rights were satisfied in this regard.

As to the remaining procedural due process claims, the Court initially finds that the allegations in Count II are insufficient and not entirely consistent with the allegations of the Complaint.  They are insufficient to the extent Plaintiffs do not identify the allegedly exculpatory and explanatory information missing from the petition.  Also, the specific allegations in Count II

do not identify the allegedly false or misleading information.  This leads to the inconsistency because the allegations in the Complaint prior to the individual counts, which are incorporated therein, about false and/or misleading information make no reference to any statements Defendants made in the petition.  Rather, Plaintiffs allege that LCCYS provided false information to the court at the shelter care hearing on August 8, 2018, that Z.C. was living with his father and that Z.C. had informed Lowe of a prior incident of sexual abuse about which Lowe had not informed Campbell or the authorities.  Plaintiffs also allege that LCCYS misrepresented facts to the court at the adjudicatory hearing on August 27, 2018, regarding Ms. Zeller's "kinship care" application.

Regardless, whether the allegedly false information was presented in the petition or presented to the court at the hearing, Defendants Geiss and Garber would be absolutely immune. *See Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) (holding that social workers are entitled to "absolute immunity for actions involving the initiation and prosecution of child custody or dependency proceedings"); *Dennis v. DeJong*, 867 F. Supp. 2d 588, 629 n.194 (E.D. Pa. 2011) (explaining that "under Pennsylvania law, both the filing of a petition and taking a child into protective custody pursuant to court order commence a proceeding under the Juvenile Act" (citing 42 Pa.C.S.A. § 6321)).  In either situation, Defendants were performing their prosecutorial roles.  *See Hughes*, 242 F.3d at 125-26 (holding that child welfare workers are entitled to absolute immunity for actions involving the initiation and prosecution of child custody or dependency proceedings because, like prosecutors, they are advocates for the state).  Defendants are therefore absolutely immune for making any false statements or misrepresentations in either the petition or during the hearings.  *See Dennis*, 867 F. Supp. 2d at 629 n.194 (concluding that the employees of CYS were absolutely immune for misstatements of

law and fact included in a memorandum to the court); *Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 642-43 (E.D. Pa. 2010) (determining that the CYS caseworkers were absolutely immune for making false statements to the judge and initiating the proceedings surreptitiously). Similarly, Defendants may be absolutely immune for failing to advise the court of the kinship care application.  Geiss chose not to place Z.C. in the care of his aunt, exercising her discretion in the course of providing the court with a recommendation.  *See Dennis*, 867 F. Supp. 2d at 628 (concluding that a "social worker's decision to place a child in protective custody with a foster family rather than the child's grandparents or a family friend was protected by absolute immunity").  Finally, the Third Circuit Court of Appeals has rejected that procedural due process requires child protective agencies to report exculpatory information, regardless of whether notice was given for the hearing, because of the appeal process provided by Pennsylvania Child Protective Services Law.  *See Mulholland*, 706 F.3d at 239.

Count II is therefore dismissed as to Defendants Geiss and Garber.  Although under the current allegations it appears that leave to amend would be futile, in light of the inconsistencies in Count II and the fact that absolute immunity is only applicable to actions these Defendants took in a prosecutorial role, the Court cautiously grants Plaintiffs leave to amend.  *See Phillips*, 515 F.3d at 236.  However, Plaintiffs are advised not to replead this Count unless they can include sufficient allegations to not only state a procedural due process violation, but to also avoid immunity.  *See Puricelli v. Houston*, No. 99-2982, 2000 U.S. Dist. LEXIS 7976, at *23 (E.D. Pa. June 12, 2000) (explaining that even where the social worker was not entitled to absolute immunity, qualified immunity applied).

In the absence of a procedural due process violation, the claim necessarily fails as to Defendant LCCYS.  *See Morrison v. Schultz*, 270 F. App'x 111, 119 n.7 (3d Cir. 2008)

(affirming dismissal of the municipal liability claim because the plaintiff did not suffer a constitutional violation).  Further, Count II contains no allegations of a custom or policy.  *See Dennis*, 953 F. Supp. 2d at 594-95 (dismissing claims against the municipality based on alleged misrepresentations in protective custody proceedings because there were no allegations that such misrepresentations were made by a policy-making official or made as a matter of policy or custom).  Count II is dismissed without prejudice as to LCCYS and with leave to amend.

### C.      **Count III:** *Monell* **Claim**

Count III (*Monell* claim) asserts that Defendant LCCYS violated Plaintiffs' constitutional rights through its customs or policies, as well as failing to properly supervise and train caseworkers.  Initially, the Court notes that if there is no underlying constitutional violation, *Monell* liability cannot exist.  *See Bridges v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) ("Appellants cannot recover from the School District under Section 1983 for a failure to train because there was no underlying constitutional violation.").  Furthermore, Plaintiffs' allegations are nothing more than legal conclusions and boilerplate accusations, such as LCCYS "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of families. . ." and "[i]t was the policy and/or custom of Defendant LCCYS to inadequately supervise and train its caseworkers. . . ."  *See, e.g.* Compl. ¶¶ 54, 58.  As such, they are woefully insufficient.  *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (affirming the district court's dismissal of the *Monell* claim because the "complaint made conclusory and general claims of failure to screen, train, or supervise employees. . .").  A plaintiff cannot satisfy the pleading standard by alleging misconduct through "legal conclusion[s] styled as factual allegation[s]."  *Kingsmill v. Szewczak*, 117 F. Supp. 3d 657, 672 (E.D. Pa. 2015) (finding that the plaintiff failed to allege well-pled facts in support of his *Monell*

claim with respect to a policy or custom because the plaintiff's allegation regarding a police officer's prior misconduct and the City's alleged knowledge of it was merely "a legal conclusion styled as a factual allegation").  The Complaint must, but fails to, provide factual support for the alleged policies and customs.  *See Lee v. City of Phila.*, No. 18-05332, 2019 U.S. Dist. LEXIS 107633, at *13, 17 (E.D. Pa. June 27, 2019) (dismissing the *Monell* claim because the plaintiff "failed to plead with sufficient specificity and factual support a policy that directly caused the alleged constitutional violations").  Such support cannot be based on the alleged failure of LCCYS to provide Lowe with notice of the hearing because the Third Circuit Court of Appeals has determined that "a one-time failure to do so would not subject the County to municipal liability under § 1983 because it does not show that the failure resulted from an agency policy or custom."  *See Mulholland*, 706 F.3d at 239.  *See also Losch*, 736 F.2d at 911 (holding that a "policy cannot ordinarily be inferred from a single instance of illegality. . .").

Plaintiffs suggest for the first time in response to the Motion to Dismiss that "Defendants Geiss, Garber and Doe acted as policymaking officials pursuant to Pennsylvania law and/or through delegation of authority from the LCCYS."  Resp. 11.  However, Plaintiffs did not include this allegation in the Complaint.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (affirming dismissal of the *Monell* claim where the complaint failed to allege that the police chief, whose alleged plan was to use excessive force, had policymaking authority).  Moreover, there are no allegations in either the Complaint or the Response that would support such a conclusory statement.  *See Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 464 (W.D. Pa. 2010) (finding that the Office of Children & Youth ("OCY") caseworker, her supervisor, and an attorney representing the OCY at court proceedings were not decisionmakers possessing final policy-making authority for the agency).  Rather, Plaintiffs' claim that LCCYS

failed to adequately supervise and train its caseworkers contradicts the suggestion that these same caseworkers are final policy-making officials, who would then be responsible for failing to supervise and train themselves.  Plaintiffs' suggestion is further refuted by Pennsylvania law. *See* 55 Pa. Code 3130.21; *Dunsmore v. Chester Cty. Children & Youth Servs.*, No. 92-3746, 1994 U.S. Dist. LEXIS 11773, at *6 (E.D. Pa. Aug. 17, 1994) (rejecting the plaintiffs "attempt to denominate caseworkers as final policymakers, [as] those roles, under Pennsylvania law, must be accorded to [the] County's executive officers, that is, the county commissioners and the director of the agency" (citing 55 Pa. Code 3130.21)).

Finally, the Complaint fails to allege sufficient facts to impose liability on LCCYS based on failure to supervise or to train.  Plaintiffs did not allege that LCCYS had knowledge of its employees' unconstitutional conduct, that there was a history of misconduct, or specify the specific area employees needed more training in.  *See Connick*, 563 U.S. at 62 (holding that a "pattern of constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train"); *Carter*, 181 F.3d at 357 (holding that where the policy in question concerns a failure to train or supervise municipal employees, the plaintiff must show, *inter alia*, that (1) "municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights").  Once again, Plaintiffs' allegations that LCCYS "inadequately supervise[d] and train[ed] its caseworkers," *see* Compl. ¶ 58, are nothing more than general labels and conclusions.

Count III is dismissed without prejudice and with leave to amend.

## V.      CONCLUSION

Plaintiffs failed to state a claim for a substantive due process violation because Defendants' decision to remove Z.C. from his mother's custody, where he resided with other children, after receiving a complaint from Z.C.'s father that Z.C. had molested another child in the father's home was not conscience shocking.  Further, there are insufficient allegations that the decisions were made pursuant to a policy or custom.  Count I is dismissed as to Defendants Geiss, Garber, and LCCYS with leave to amend.  Because all named Defendants are dismissed, Count I is also dismissed as to Doe and with leave to amend.

Count II is also dismissed with leave to amend.  There are insufficient allegations to support a procedural due process claim against Defendants Geiss and Garber because Lowe received the protections to which she was entitled.  For this reason, and in the absence of allegations that a policy or custom caused harm, Count II is also dismissed as to LCCYS. Although, in an abundance of caution, Plaintiffs are granted leave to amend, they are advised not to replead this claim unless they can include sufficient allegations to not only state a procedural due process violation, but to also avoid immunity.

Finally. Count III, asserting *Monell* liability against LCCYS, is dismissed because Plaintiffs fail to plead specific factual allegations of a policy or custom and, instead, make only conclusions and boilerplate accusations.  The dismissal is without prejudice and with leave to amend.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr._____*
JOSEPH F. LEESON, JR.
United States District Judge

22
120720